NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH SCHNEIDER : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SUMITOMO CORPORATION OF : <br> AMERICA, : <br> : <br> Defendant. : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 09-5094 (DMC) (MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Sumitomo Corporation of America ("Defendant"). Defendant moves to dismiss the Complaint of Elizabeth Schneider ("Plaintiff"), who asserts a number of claims related to the termination of her employment with Defendant.[1] Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.

After carefully considering the parties' submissions, and based on the following, Defendant's motion to dismiss is **granted in part and denied in part**.

## I. BACKGROUND

Plaintiff, Elizabeth Schneider, is a resident of New Jersey. Complaint ¶ 1. She began her employment with Defendant in June 1992 as a customer service representative and, ultimately held a senior sales position. Id. ¶ 4. Throughout Plaintiff's employment with Defendant, she worked in New Jersey with a subsidiary of Defendant. Id. ¶ 4. Defendant is a New York Corporation with a

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

principal place of business in New York. Id. ¶ 2.

Plaintiff received promotions and positive evaluations during her employment, up through the last evaluation performed, which was in the Summer of 2008. Id. On or about October 16, 2008, Plaintiff suffered severe injuries in a non-work related accident that affected her lower back, neck, head and left shoulder. Id. Plaintiff was required to be out of work for months. Id. ¶ 6. Plaintiff received a combination of short-term disability benefits from her employer and the State of New Jersey through April 23, 2009. Id. ¶ 7. On April 27, 2009, Plaintiff's doctor provided written authorization advising that Plaintiff was able to return to work on May 4, 2009, provided that Defendant permitted her to work part-time hours until she fully recovered. Id. ¶ 8. On May 2, 2009, Plaintiff received an overnight delivery letter advising that her position with the company had been eliminated and she was terminated. Id. ¶ 9. The particular subsidiary where Plaintiff worked (in New Jersey), relocated to New York. Id.

When Plaintiff inquired about receiving her accrued vacation time and a severance, Defendant denied both requests. Id. ¶ 10. The policy regarding vacation time expressly provides "[i]n the event of termination of employment, payment in lieu of accrued unused vacation will be made." Id. ¶ 11. Defendant denied Plaintiff payment for vacation time on the basis that she was on disability leave. Id. ¶ 12.

Plaintiff brings claims pursuant to the New Jersey Law Against Discrimination ("NJLAD"), asserting that Defendant discriminated/retaliated against her based upon her disability and age (Counts I/II respectively). Plaintiff also asserts claims for breach of contract and breach of the duty of good faith and fair dealing. (Counts III/IV). Defendant moves to dismiss Plaintiff's Complaint in its entirety.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 ( 1984). In Bell Atlantic Corp. v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." 550 U.S. 544 (2007) (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

## III. DISCUSSION

Defendant moves to dismiss **(A)** Plaintiff's NJLAD claims, and **(B)** Plaintiff's claims for breach of contract, and breach of the implied covenant of good faith and fair dealing.

### A. THE NEW JERSEY LAW AGAINST DISCRIMINATION (COUNTS I/II)

Defendant asserts that Plaintiff's NJLAD claims must be dismissed. Defendant argues that, even accepting Plaintiff's allegations as true, New Jersey Law (i.e., the NJLAD) does not apply to the allegedly discriminatory conduct of Defendant. Specifically, Defendant contends that New York law applies because: Defendant is registered and headquartered in New York; the decision to terminate Plaintiff was made in New York; and, any reinstatement of Plaintiff would have been to the New York office (as the New Jersey office closed). Defendant asserts, then, that the NJLAD does not apply.

Plaintiff responds that she was a New Jersey resident, and stresses that she exclusively worked in New Jersey during her 16-year term of employment with Defendant. Accordingly, she asserts, the NJLAD is applicable to her discrimination claim.

1. Applicable Law

The NJLAD was enacted in 1945 with the goal of "nothing less than the eradication of the cancer of discrimination." McKenna v. Pacific Rail Serv., 32 F.3d 820, 840 (3d Cir. 1994) (citing Lehmann v. Toys "R" Us, Inc., 132 N.J. 587, 600, 626 A.2d 445 (1993)).

The NJLAD, however, does not apply every time a plaintiff alleges that he or she has suffered discrimination. For New Jersey "substantive law to be [applied] in a constitutionally permissible manner, [New Jersey] must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Blakey v. Continental Airlines, Inc., 164 N.J. 38, 65, 751 A.2d 538 (2000) (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981)); see also D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516, 539,

628 A.2d 305 (1993).

Mere, "occasional contact with New Jersey as part of [a plaintiff's] employment [i]s insufficient to turn those visits into plaintiffs being 'based' in New Jersey for employment purposes." Norenius v. Multaler, Inc., 2008 N.J. Super. LEXIS 2923 (App. Div. 2008) (quoting Buccilli, 283 N.J. Super. at 10-11).

As the Court in Satz v. Taipina explained,

> New Jersey courts have found that it is unfair to subject an employer to different legal requirements if its employees reside in different states. Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6, 11, 660 A.2d 1261 (App. Div. 1995) (citing cases). Employment cases which straddle state lines can involve several different states, including the state of the employee's residence, the state where the employee works, the state where the employer's headquarters is located, the state where the employer does business, and the state where the alleged discrimination occurred. Generally, though, regardless of the number of states involved, **New Jersey courts have applied the law of the state where the employee works to claims of workplace discrimination.**

2003 U.S. Dist. LEXIS 27237 (D.N.J. Apr. 15, 2003), aff'd, 122 Fed. Appx. 598 (3d Cir. N.J. 2005) (emphasis added). In short, although a number of factors are considered to determine which state's law applies, the most critical factor is the location where the employee works. See id.

    2. Analysis

As noted above, Defendant argues that New Jersey law does not apply because: the company (Sumitomo) was registered and headquartered in New York; the decision to terminate Plaintiff was made in New York; and, any potential reinstatement of Plaintiff would have been to the New York office. The Court cannot agree with Defendant, as the location where a Plaintiff works is the most critical factor in determining which state law to her discrimination claims.

First, while Defendant was a New York based corporation, the out-of-state location of an

employer's headquarters does not prevent the company from being subject to the discrimination laws of New Jersey. See, e.g., McDonnell v. State of Illinois, 319 N.J. Super. 324, 340-41, 725 A.2d 126 (App. Div. 1999) (finding that where a New Jersey resident worked for the state of Illinois in an office in New Jersey, New Jersey law applied); Swick v. UPS, 2005 U.S. Dist. LEXIS 15630, at *28 n.7 (D.N.J. July 25, 2005); cf. Satz, 2003 U.S. Dist. LEXIS 27237 (finding that plaintiff, who was employed exclusively in Pennsylvania and Delaware by defendants who had offices in New Jersey, may not pursue claims against defendants under the NJLAD). Accordingly, Defendant's New York headquarters only minimally weighs in favor of applying New York law.

Next, Defendant asserts that the decision to terminate Plaintiff was made in New York (at its main headquarters). It is not clear how much weight a Court should place on this factor. As the Court in Buccilli v. Timby, Brown & Timby noted, "Plaintiff's employment began and ended in Pennsylvania[, and s]he worked exclusively in that state and the conduct which she alleges was unlawful occurred there." 660 A.2d 1261, 1263 (App. Div. 1995). Accordingly, Courts must consider both the place of employment and the place that the allegedly discriminatory conduct occurred. Id.; see also Swick, 2005 U.S. Dist. LEXIS 15630, at *28 n.7 (considering both where the plaintiff worked and where the decision to terminate plaintiff was made to determine if New Jersey law applied). Although the location where an employment decision takes place (e.g., at a corporate headquarters) may be relevant, it is certainly not dispositive. See Satz, 2003 U.S. Dist. LEXIS 27237, at *50 (noting that although "[Defendant] is headquartered in East Hanover, New Jersey, and [the] individuals involved in the decision to transfer plaintiff, have offices in New Jersey" this fact

alone was insufficient to "trigger application of the NJLAD.").[2]

Third, Defendant argues that any reinstatement of Plaintiff, would have taken place in New York. Accordingly, Defendant contends that Plaintiff's "place of work" would have been New York. The Court disagrees. Here, Plaintiff did not have a place of employment, as she was out of work at the time of her termination. Plaintiff's potential employment location after the time of the allegedly discriminatory conduct does not constitute her place of employment for determining which state's law applies to her discrimination claims.

This Court notes, however, that Plaintiff was receiving disability benefits from the State of New Jersey during her absence from work. See Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 658 (D.N.J. 2008) (observing that after the plaintiff "was terminated, Plaintiff received unemployment benefits from the Pennsylvania Department of Labor and Industry Unemployment Compensation Division, . . . [in determining that] the record indicates that Plaintiff's 'state of employment' was Pennsylvania."). This factor weighs in favor of treating New Jersey as Plaintiff's place of employment prior to, and during, the period of her termination.

In conclusion, viewing the circumstances here in their totality, the Court finds that Plaintiff may properly invoke the NJLAD. Plaintiff worked at Defendant's New Jersey location for 16 years prior to her discharge. This is not a case were an employee simply did a portion of her work in New Jersey. See, e.g., Peikin, 576 F. Supp. 2d at 657 (finding that frequent trips to New Jersey were insufficient to make the NJLAD apply to a plaintiff's claims). Plaintiff worked exclusively in New

---

[2] Defendants urge that New York has a significant interest in this case, as the allegedly discriminatory decision was made in New York. Certainly, New York has an interest in preventing discriminatory conduct of individuals and businesses in its jurisdiction. New Jersey, however, also has a particularly strong interest in addressing discrimination against individuals working (exclusively) within its borders.

Jersey and, indeed, represents that she did not work a single day at Defendant's New York office. Additionally, as noted above, an individual's primary location of employment appears to be the most important factor. As the Satz Court explained, "regardless of the number of states involved, New Jersey courts have applied the law of the state where the employee works to claims of workplace discrimination." 2003 U.S. Dist. LEXIS 27237, at *50; see, e.g., Buccilli, 660 A.2d at 1263; Satz, 2003 U.S. Dist. LEXIS 27237, at *46-47; Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 613-14 (D.N.J. 2001); McDonnell, 319 N.J. Super. at 340-41, 725 A.2d 126 (App. Div. 1999) (finding that where a New Jersey resident worked for the state of Illinois in an office in New Jersey, New Jersey law applied).[3]

At this stage, the Court expresses no view as to the merits of Plaintiff's claims. The Court merely finds that Plaintiff's employment in New Jersey permits her to file her employment discrimination claims under the NJLAD. Defendant's motion to dismiss is, accordingly, denied.

### B.  BREACH OF CONTRACT (COUNT III) & BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV)

Defendant argues that Plaintiff's claims for breach of contract, and breach of the implied covenant of good faith and fair dealing, must be dismissed. Defendant first argues that the claims are duplicative of Plaintiff's breach of contract claims, and therefore are barred. Defendant next asserts that Plaintiff has failed to state a claim upon which relief may be granted.

---

[3] Although this Court notes that a plaintiff's place of residence is of limited value in assessing whether the NJLAD applies, see Perry v. Prudential-Bache Securities, Inc., 738 F. Supp. 843, 854 (D.N.J. 1989), it is still worth noting that Plaintiff resided in New Jersey for the entirety of her term of employment with Defendant. Additionally, during the period Plaintiff was out of work, she collected benefits from the State of New Jersey. Peikin, 576 F. Supp. 2d at 658.

1. <u>Applicable Law</u>

    (a) *Duplicative Claims*

Under New Jersey law, "supplementary common law causes of action [are not permitted] when a statutory remedy under the [NJ]LAD exists." <u>Martinez v. Anselmi & Decicco, Inc.</u>, 2009 U.S. Dist. LEXIS 119295, at *20 (D.N.J. Dec. 22, 2009) (citing <u>Catalane v. Gilian Instrument Corp.</u>, 271 N.J. Super. 476, 638 A.2d 1341, 1349 (App. Div. 1994)). Therefore, "where the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred." <u>Id.</u> (collecting cases); <u>Dimare v. Metlife Ins. Co.</u>, 2008 U.S. Dist. LEXIS 43093 (D.N.J. May 30, 2008), <u>aff'd</u>, 2010 U.S. App. LEXIS 4571 (3d Cir. N.J. Mar. 4, 2010) ("[A] breach of contract claim that seeks damages for discriminatory acts on the basis of a statement in a policy manual is preempted by the LAD); <u>DeCapua v. Bell Atlantic - New Jersey</u>, 313 N.J. Super. 110, 128, 712 A.2d 725 (Law Div. 1998) ("Because plaintiff's common-law breach of contract claim duplicates his statutory claim under New Jersey's Law Against Discrimination, it is barred").

    (b) *Stating a Claim under <u>Woolley</u>*

Under New Jersey law, while "an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine," <u>Wade v. Kessler Institute</u>, 172 N.J. 327, 338, 798 A.2d 1251 (2002) (citation omitted), "New Jersey law does recognize a cause of action for breach of contract against employers who fail to honor the express or implied promises made in an employee manual or handbook." <u>Ratti v. Service Management Systems, Inc.</u>, 2008 U.S. Dist. LEXIS 64984 at *9 (D.N.J. Aug. 25, 2008) (citing <u>Woolley v. Hoffmann-La Roche, Inc.</u>, 99 N.J. 284, 491 A.2d 1257 (1985)). Accordingly, under some circumstances, an employer can be

bound by explicit/implied promises in employee manuals.

2. Analysis

Defendant's first argument is that Plaintiff's contract claims are duplicative of her NJLAD claims.

Admittedly, at first glance, Plaintiff's Complaint appears to be asserting discrimination and contract claims that substantivally overlap. For example, the Complaint states, "Defendants [Sumitomo] **unlawfully discriminated against the plaintiff** when it chose to terminate her employment and also to avoid paying Plaintiff a severance and unused vacation time." Complaint at ¶ 14 (emphasis added). Further, after describing her efforts to obtain severance and back pay, Plaintiff explicitly alleges that "Defendant's conduct was discriminatory and/or retaliatory **due to Plaintiff's disability**." Id. ¶¶ 10-13. Based upon these statements, Defendant argues that Plaintiff's breach of contract claims are based on the same underlying facts as her NJLAD claim for disability/age discrimination, and must be dismissed. The Court does not agree.

Although the Complaint is not entirely clear on this point, the Court understands the Complaint to assert distinct claims. Plaintiff alleges that "Defendant [Sumitomo] unlawfully violated its own employment policies and practices, and the implied covenant of good faith and fair dealing, by discriminating against the Plaintiff and terminating Plaintiff to avoid restoring her to her position or paying her a severance**."** Id. ¶ 15. Accordingly, although the Complaint's description of Plaintiff's discrimination and contract claims overlap, it appears that Plaintiff is seeking redress for two separate wrongs: discrimination, and breach of contract/breach of the covenant of good faith and fair dealing. Accordingly, this case is unlike the cases in which a plaintiff seeks redress for conduct that is **identical** under two separate causes of action—e.g., where the asserted causes of

action are for discrimination under the NJLAD and for the violation of an employment policy to maintain a nondiscriminatory environment. See, e.g., Dimare, 2008 U.S. Dist. LEXIS 43093, at *9; DeCapua, 313 N.J. Super. at 128. Here, Plaintiff's contract claims are based on terms of the employee manual that are unrelated to discrimination; Plaintiff's contract claims are, instead, related to the manual's provisions on disability leave, vacation pay, etc. As Plaintiff seeks redress for distinct conduct under each cause of action, the Court does not find that the NJLAD and contract-based claims are duplicative. See Martinez, 2009 U.S. Dist. LEXIS 119295, at *20.

Defendant's second argument is that the employment manual, which Plaintiff asserts gives rise to contractual obligations, contains a disclaimer sufficient to prevent the manual from being enforceable as a matter of law. The Court agrees.

Under certain circumstances "courts will enforce a manual's provisions related to both the grounds for termination and the procedures to be followed when terminating an employee" under Woolley. See Wade v. Kessler Inst., 172 N.J. 327, 340, 798 A.2d 1251 (2002). That is, a Court will find an employee manual to give rise to contractual obligations. Where there is a clear disclaimer, however, such policies (e.g., contained in handbook) will not operate to create contractual rights for an employee. See Theodossiou v. Commerce Bank, N.A., 2007 U.S. Dist. LEXIS 26029, at *7-9 (D.N.J. Apr. 5, 2007) (dismissing contract claims in light of a disclaimer that was a full page long, and located near the front of the handbook); Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 383 (D.N.J. 1999) (granting a motion to dismiss a plaintiff's contract claims that were based upon the terms of an employee handbook, where the handbook's "at-will" disclaimer was "set out on a separate page on the first page of the text of the manual"); see also Falco v. Cmty. Med. Ctr., 296 N.J. Super. 298, 686 A.2d 1212 (1997).

In Theodossiou, clear disclaimers were sufficient to prevent a contract from arising. The Court observed that

> the Handbook contains clear disclaimers that are prominently displayed, indicating that no such implied contract has been created by its contents. Page four of the Handbook contains a one page long "AT - WILL STATEMENT." This caption is printed in capital, bold letters at the top, center of the page. Just below it, in the same print but slightly smaller font, it reads "IMPORTANT NOTICE." In bold lettering, surrounded by a bold border, in the center of the page, the text reads, "[e]mployment with Commerce is terminable 'at-will' . . . "Commerce has the absolute power . . . to terminate your [the employee's] employment, at any time, for any reason or no reason, with or without notice." The text below this box reads, in part, that "Commerce does not make guarantees of any kind with respect to your [the employee's] continued employment," and that "Commerce is free to change its working conditions, policies and practices . . . without having to consult anyone and without getting anyone's agreement."

2007 U.S. Dist. LEXIS 26029, *7-8. The plaintiff's complaint was dismissed, as the "disclaimers were sufficient to prevent the creation of any implied contractual rights." Id. at 9.

Similarly, in Kronick v. Bebe Stores, Inc., the Court dismissed a plaintiff's contract claims in view of a valid disclaimer stating that the company policy statements were non-binding. The Court found that "the disclaimer is clear, comports with the Woolley requirements, and is prominently located on the signature page of the document[; therefore the] disclaimer serves to overcome the implication that the policy statement is a contract." 2008 U.S. Dist. LEXIS 74967, at *14 (D.N.J. Sept. 29, 2008). There, the employee manual explicitly provided that plaintiff was an "'at will' employee which means that the working relationship can be terminated by either employer or employee at any time, [without] without cause or advance notice" and that the company's "policies and procedures, either oral or written, are not contracts[; n]or are these policies or procedures guarantees of employment for any length of time or for any particular term or condition." Id.

Finally, in a recent case in this District, Ruffo v. Wawa, Inc., the Court found that the policies stated in an employment manual were not binding as the disclaimer provided that "[the employer] may also change its pay structure, benefits, and/or any term or condition of employment without prior consultation or agreement with an associate." 2010 U.S. Dist. LEXIS 36134, at *12 (April 13, 2010). The Court also noted that the handbook stated that "[t]his Handbook is not a contract guaranteeing employment for any specific duration" and "[t]he policies and practices stated in this Handbook may be changed at any time, without advance notice, at [the employer's] discretion." Id.

This Court finds that the disclaimer provided by Defendant here is sufficient to prevent the handbook's policies from being enforceable.[4] First, the policy states—on page one of the manual, and in bold—that the employment relationship is "at-will." It explains, also in bold, that "[t]his handbook does not constitute a contract of employment and should not be construed as such." Next, the handbook cautions employees that

> [t]he policies, rules and regulations in this handbook are intended as guidelines only and are subject to change at the sole discretion of the Company, with or without notice. [Defendant] retains the discretion to interpret provisions of this handbook. . . . . [Defendant] reserves the right to make the final and binding interpretation of all policies, procedures and practices in this handbook or elsewhere.[5]

The location of the disclaimer, and the fact that it emphasizes that the handbook contains non-binding guidelines that can be modified at any time by the employer without notice, prevents

---

[4] In addition to the allegations of the Complaint, the Court may consider documents attached to or specifically referenced in the Complaint without converting the motion to dismiss into one for summary judgment. See Mele v. FRB, 359 F.3d 251, 255 n.5 (3d Cir. 2004); Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

[5] The handbook provides another disclaimer, on page 23, stating that after an employee takes medical leave the company will only reinstate the employee if doing so is appropriate in light of the business conditions at the time reinstatement is sought.

the policies stated therein from being treated as contractual.[6]

The Court finds that Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must be dismissed.[7]

### IV. **CONCLUSION**

For the reasons stated, Defendant's motion to dismiss Plaintiff's NJLAD claims is **denied**, and Defendant's motion to dismiss Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing is **granted**.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        June   14  , 2010
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

---

[6] Plaintiff contends that Defendant's motion to dismiss her contract-based claims should not be granted because the disclaimer was not prominent and consisted of "confusing legalese." The Court disagrees. As explained above, the disclaimer is simply stated, on the first page of the handbook and the critical statement of "at will" employment is in bold.

Plaintiff, lastly, contends that questions as to contractual liability from the employment manual cannot be determined at this stage of the case. However, as the other decisions from this District indicate, such claims can be properly assessed at the motion to dismiss stage. See pages 11-13, supra.

[7] Plaintiff's breach of the implied covenant of good faith and fair dealing claim must be dismissed, as such a claim "does not arise in the absence of a contractual relationship." See Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc., 2010 U.S. Dist. LEXIS 29677, at *5 (D.N.J. March 29, 2010) (quoting Ferraioli v. City of Hackensack Police Dep't, 2010 U.S. Dist. LEXIS 8527, at *12 (D.N.J. Feb. 2, 2010)); Martin v. Port Auth. Transit Corp., 2010 U.S. Dist. LEXIS 29522, at *5 n.4 (D.N.J. March 25, 2010) (citing Wade v. Kessler, 172 N.J. 327, 798 A.2d 1251, 1262 (N.J. 2002)).

-14-